**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dallas Barnes, | No. CV-21-00156-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Dallas Barnes's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 17, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 20, Def. Br.), and Plaintiff's Reply (Doc. 21, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 14, R.) and now affirms the Administrative Law Judge's (ALJ) decision (R. at 13–26) as upheld by the Appeals Council (R. at 1–5).

**I.     BACKGROUND**

Plaintiff first filed an application for Disability Insurance Benefits on September 27, 2012, for a period of disability beginning on July 27, 2011. (R. at 13.) On June 17, 2014, an ALJ denied her first application. (R. at 13, 117–29.) Plaintiff then filed the present application for Disability Insurance Benefits for a period of disability beginning the day after her first denial, June 18, 2014. (R. at 13.) On September 22, 2020, Plaintiff appeared before

an ALJ for the most recent hearing regarding her claim. (R. at 13, 90–113.) On October 7, 2020, the ALJ denied Plaintiff's claim (R. at 13–26), and on January 25, 2021, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision (R. at 1–5).

The Court has reviewed the record and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of anxiety, major depressive disorder, and post-traumatic stress disorder. (R. at 16.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 25.) In so doing, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 17.) The ALJ found that Plaintiff has the Residual Functional Capacity (RFC) to perform a full range of work with nonexertional limitations that she "is able to perform noncomplex routine tasks with few changes in the work setting not involving work with the general public." (R. at 19.) Accordingly, the ALJ found that Plaintiff can perform work in the national economy, including kitchen helper, hand packager, and cleaner II, such that Plaintiff is not under a disability as defined in the Social Security Act. (R. at 25.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises several issues for the Court's consideration. First, Plaintiff argues that she was denied a constitutionally valid adjudicatory process, because the executive of the Social Security Administration could serve for a longer term than the President and could be removed only for cause, which the Supreme Court has held to be unconstitutional. (Pl. Br. at 7–10.) Second, the ALJ erred by identifying jobs in the national economy that

Plaintiff can perform that are inconsistent with the RFC the ALJ formulated. (Pl. Br. at 10.) Third, the ALJ erred by failing to give germane reasons to discount the opinion of a Licensed Associate Counselor. (Pl. Br. at 11–12.) And fourth, the ALJ erred in evaluating Plaintiff's symptom testimony. (Pl. Br. at 12–15.) The Court examines these arguments in turn.

### A.     The Adjudicatory Process

In 2020, the Supreme Court held that the statutory section providing for the removal of the head of the Consumer Financial Protection Bureau was unconstitutional and that section was severable from the statute. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197, 2211, 2245 (2020). Subsequently, the Supreme Court concluded the removal provision regarding the single director of the similarly-structured Federal Housing Finance Agency was also unconstitutional and severable. *Collins v. Yellen*, 141 S. Ct. 1761, 1784, 1787 (2021).

Here, the parties do not dispute that Plaintiff's claims were adjudicated within the Social Security Administration while Commissioner Saul served under an unconstitutional and severable removal provision. As a result, Plaintiff argues she is entitled to remand for another adjudication of her claim by the Social Security Administration. The Ninth Circuit resolved the same question is *Kaufmann v. Kijakazi*, 32 F.4th 843, 849–50 (9th Cir. 2022). Relying on the Supreme Court's analysis in *Collins*, the Ninth Circuit held that a claimant such as Plaintiff here is not entitled to "unwind the decision below" in the absence of a showing of actual harm; specifically, the claimant must show a link between the unconstitutional removal provision and the denial of benefits in the claimant's case. *Id.* at 850 (quoting *Collins*, 141 S. Ct. at 1788–89).

In other words, simply because Commissioner Saul served under an unconstitutional removal provision at the time Plaintiff's claim was adjudicated in the Social Security Administration does not mean Plaintiff is entitled to a re-adjudication of her claim. *See id.* Plaintiff must demonstrate actual harm arising from the unconstitutional removal provision. *See id.* Plaintiff makes no argument and proffers no evidence of actual harm, or

even a connection between the removal provision and her specific case, and the Court must therefore deny her request for remand on this basis.

### B. Consistency Between RFC and Identified Jobs

Plaintiff next contends that the ALJ erred by finding Plaintiff could work in "reasoning level two" jobs under the Dictionary of Occupational Titles (DOT)—defined as the ability to "carry out detailed but uninvolved written or oral instructions"—when the ALJ limited Plaintiff to "non-complex tasks." (Pl. Br. at 10.) Applicable precedent provides otherwise. The Ninth Circuit has concluded that a claimant limited to "short, simple instructions and procedures" had the capacity to work in "reasoning level two" occupations because there is "no actual conflict" between the formulations of those limitations. *Ranstrom v. Colvin*, 622 F. App'x 687, 688–89 (9th Cir. 2015); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1004 n.6 (9th Cir. 2015), *as amended* (Dec. 7, 2015). The ALJ thus did not err in this respect.

### C. Weighing of "Other Source" Medical Evidence

Plaintiff also argues that the ALJ erred by discounting the opinions of Licensed Associate Counselor (LAC) Alane Bowling. (Pl. Br. at 11–12.) On August 25, 2018, Mr. Bowling prepared a report for Plaintiff's counsel in which he stated he saw Plaintiff once a week for the previous nearly-three months. (R. at 987–88.) Mr. Bowling opined that, on account of issues including thoughts of suicide, anxiety, recollections of a traumatic experience, and paranoia, Plaintiff was unable to "maintain attendance and be punctual . . . , [c]omplete a normal workday and workweek without interruptions from psychologically based symptoms, [p]erform at a consistent pace without an unreasonable number and length of rest periods, [a]ccept instructions and respond appropriately to criticism from supervisors, [d]eal with normal work stress, [d]eal with stress of semiskilled and skilled work, [and] [u]se public transportation." (R. at 988.) Mr. Bowling further estimated that Plaintiff would be absent from work more than four days per month and her impairment had lasted more than 12 months and could be expected to last another 12 months. (R. at 988.)

The parties agree that, under the applicable regulations, a Licensed Associate Counselor is not an "acceptable medical source" and is thus classified as an "other source," and the ALJ must simply provide "germane" reasons for rejecting "other source" medical evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ discounted Mr. Bowling's opinions because the degree of limitation he set forth with respect to Plaintiff was not supported by the other evidence in the record. (R. at 23.) In support, the ALJ pointed to evidence that included reports that Plaintiff's personal relationships were going well, she was making friends, she had numerous successful social interactions, and that her anxiety was continuously improving. (R. at 23.)

The reasons the ALJ provided to discount Mr. Bowling's opinion were germane to Mr. Bowling's assessment of Plaintiff's limitations. Specifically, the evidence the ALJ cited went to the degree to which Plaintiff was limited in her ability to complete a normal workday without interruption from psychologically based symptoms, perform work without unreasonable rest periods, respond to supervisors, and deal with work stress. Ultimately, the ALJ did find and account for certain limitations, including that Plaintiff was moderately limited in interacting with others, mildly to moderately limited in concentrating, persisting, or maintaining pace, and moderately limited in adapting and managing herself. (R. at 18.) In arriving at these limitations, the ALJ gave germane reasons for concluding that Plaintiff's limitations were not as severe as Mr. Bowling stated based on the evidence in the record. As a result, the ALJ committed no error in evaluating Mr. Bowling's opinions.

### D. Plaintiff's Symptom Testimony

Lastly, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints. (Pl. Br. at 13–15.) While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). For

example, "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

The ALJ noted that Plaintiff reported severe anxiety in social situations but that her testimony and the other evidence did not support that. (R. at 20.) Specifically, the ALJ noted that Plaintiff had routinely engaged in social interactions without experiencing disabling anxiety or a panic attack, including socializing with friends, a road trip to Tucson, a Zombie walk with a friend, meeting new friends at a party, and active and engaged participation in group therapy. (R. at 20–21.) The ALJ also cited numerous medical records indicating that Plaintiff's symptoms improved measurably with therapy and medication. (R. at 20–22.) These are clear and convincing reasons to conclude that the social anxiety Plaintiff reported was not disabling, but rather less severe. The Court again notes that the ALJ did assign Plaintiff a moderate limitation in the ability to interact with others and accounted for that in assessing her capacity to work in the national economy. The reasons the ALJ gave for concluding Plaintiff's social anxiety was less severe than she generally reported were sufficiently clear and convincing. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The Court also finds Plaintiff's argument that the ALJ failed to explain how Plaintiff's activities were inconsistent with her symptom testimony lacks merit. The ALJ explained that Plaintiff's regular, successful social activities with friends and others were inconsistent with her reports of disabling social anxiety. (R. at 20.) For these reasons, the Court does not find the ALJ erred in assessing Plaintiff's symptom testimony.

**IT IS THEREFORE ORDERED** affirming the October 7, 2020 decision of the ALJ (R. at 13–26), as affirmed by the Appeals Council on January 25, 2021 (R. at 1–5).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and close this case.

Dated this 24th day of March, 2023.

Honorable John J. Tuchi
United States District Judge